HAEGGQUIST & ECK, LLP

1

2  HAEGGQUIST & ECK, LLP
   ALREEN HAEGGQUIST (221858)
3    alreenh@haelaw.com
   AMBER L. ECK (177882)
4    ambere@haelaw.com
   KATHLEEN HERKENHOFF (168562)
5    kathleenh@haelaw.com
   AARON M. OLSEN (259923)
6    aarono@haelaw.com
   ROBERT D. PRINE (312432)
7    robertp@haelaw.com
8  225 Broadway, Suite 2050
   San Diego, CA 92101
9  Telephone: (619) 342-8000
   Facsimile: (619) 342-7878

10 Attorneys for Plaintiff and the
11   [Proposed] Class

12 [Additional counsel appear on signature page.]

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16 | GARY MERENSTEIN, on Behalf of | Case No.: |
   | Himself and All Others Similarly Situated, | |

17 |  | **CLASS ACTION** |

18 |    Plaintiff, | CLASS ACTION COMPLAINT FOR |
   |  | DAMAGES AND EQUITABLE RELIEF |

19 |    v. | |

20 | APPLE INC., a California Corporation, | |

21 |    Defendant. | |

22 |  | JURY TRIAL DEMANDED |

23

24

25

26

27

28

Plaintiff Gary Merenstein ("Plaintiff"), by and through his attorneys, brings this Class Action Complaint for Damages and Equitable Relief on behalf of himself and the Class (as defined herein) against Apple Inc. ("Apple," the "Company," or "Defendant"). The allegations set forth herein are based upon Plaintiff's information and belief, except as to facts alleged as to Plaintiff's individual purchase and/or ownership of the Apple product identified herein. As to the allegations set forth on information and belief, Plaintiff submits that the allegations will be shown to have evidentiary support after a reasonable opportunity for discovery in the action.

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of purchasers of Devices[1] sold by Apple, including iPhones, iPads, and iPods.

2. The Devices are produced, promoted, and distributed by Apple in both the United States and throughout the world.  Apple sells the Devices to consumers directly and through third parties.

3. Apple created, and directed consumers to install, Updates to the Devices.  As set forth herein, Apple designed one or more of the Updates to knowingly slow down the operation of the Devices in order to achieve at least two goals that financially and competitively benefitted Apple: 1) to encourage consumers to upgrade their Devices to the newer products Apple had released; and 2) to improperly mask the need for the consumers to replace the lithium-ion battery in their Devices, whether due to defect or simple draining of the battery's useful life

---

[1]     As used herein, the term "Devices" includes, but is not limited to, Apple products marketed for sale as the iPhone 5, iPhone 5s, iPhone SE, iPhone 6, iPhone 6s, iPhone 6 Plus, iPhone 6s Plus, iPhone 7, iPhone 7 Plus, versions of the iPad 4th generation and later (including the iPad Mini 2), and the iPod touch 6th generation and later. As used herein, the term "Updates" includes, but is not limited to, Apple's iPhone operating system ("iOS") software updates: iOS 10.2, 10.2.1, 10.3, 10.3.1, 10.3.3 and updates and to the iOS 11, 11.0.1, 11.02, 11.03, 11.1.1, 11.1.2, 11.2, and 11.2.1 updates.

1  (collectively, the "Battery Issue")[2].  Indeed, on December 20, 2017, Apple tacitly admitted this

2  practice (the "December 20 Admission") by reportedly stating, in relevant part:

3     ... Lithium-ion batteries become less capable of supplying peak current demands
       when in cold conditions, have a low battery charge or as they age over time,
4      which can result in the device unexpectedly shutting down to protect its
       electronic components.
5
6      Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to *smooth
       out* the instantaneous peaks only when needed to prevent the device from
7      unexpectedly shutting down during these conditions. We've now extended that
       feature to iPhone 7, with iOS 11.2, and plan to add support for other products in
8      the future.[3]

9     4.      On December 21, 2017, money.cnn.com released an online article, citing

10 industry insider Doron Myersdorf, Chief Executive Officer of instant-charging battery startup,

11 StoreDot, explaining that Apple's "smooth[ing] out" is understood to mean that phones will

12 reorder incoming commands to make sure not all of them are done in parallel. Myersdorf is

13 quoted as stating that "[t]he inevitable outcome of it [*i.e.*, smoothing out] will be an inherent

14 slowdown of the average response times by the system."[4]

15    5.      Indeed, on December 28, 2017, Apple issued a statement on its website stating,

16 in pertinent part, "We apologize." The December 28, 2017 Apple statement (the "Apology")

17 merely confirmed the earlier undisclosed material facts – facts which Apple should have

18 disclosed long before. As stated by Apple in the "Apology":

19    iOS 10.2.1 (released January 2017) includes updates for previous models of
       iPhone to prevent them from unexpectedly shutting down. This includes a feature
20     for iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and iPhone SE to
       dynamically manage the instantaneous performance peaks, only when needed, to
21     prevent the device from unexpectedly shutting down. This capability was also

22
_____

23 [2]     As recently as January 9, 2018, reports surfaced of the battery in a user's iPhone 6 Plus
   emitting smoke in an Apple store in Switzerland. Other similar reports of apparent overheating
24 of one or more of the Devices have been reported by consumers online.

25 [3]     https://techcrunch.com/2017/12/20/apple-addresses-why-people-are-saying-their-
   iphones-with-older-batteries-are-running-slower.
26

27 [4]     *See* December 21, 2017 article entitled, "*Apple: Yes, we're slowing down older iPhones*"
   by Ivana Kottasova, available at: http://money.cnn.com/2017/12/21/technology/apple-slows-
28 down-old-iphones/index.html.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

HAEGGQUIST & ECK, LLP

extended to iPhone 7 and iPhone 7 Plus with iOS 11.2, and we will continue improving our power management feature in the future. This feature's only intent is to prevent unexpected shutdowns so that the iPhone can still be used. This power management feature is specific to iPhone and does not apply to any other Apple products.

This power management works by looking at a combination of the device temperature, battery state of charge, and battery impedance. Only if these variables require it, iOS will dynamically manage the maximum performance of some system components, such as the CPU and GPU, in order to prevent unexpected shutdowns. As a result, the device workloads will self-balance, allowing a smoother distribution of system tasks, rather than larger, quick spikes of performance all at once. In some cases, a user may not notice any differences in daily device performance. The level of perceived change depends on how much power management is required for a particular device.

In cases that require more extreme forms of this power management, the user may notice effects such as:

- Longer app launch times

- Lower frame rates while scrolling

- Backlight dimming (which can be overridden in Control Center)

- Lower speaker volume by up to -3dB

- Gradual frame rate reductions in some apps

- During the most extreme cases, the camera flash will be disabled as visible in the camera UI

- Apps refreshing in background may require reloading upon launch

6.     As set forth herein, while Apple may have stated, at various times prior to the December 20 Admission, that one of the Updates (iOS 10.2.1) was designed to address an "unexpected shutdown" issue with the Devices, Apple failed to disclose, at any time prior to the December 20 Admission, the material fact that Apple designed the Updates in a manner to cause the slowing of the Devices' operation when installed.

7.     In failing to disclose the intended slowdown implemented via the Updates, Apple also failed to inform consumers of the opportunity to remedy the issue by simply replacing the battery. As journalist Gordon Kelly aptly wrote in a December 21, 2017 Forbes article entitled, "*Why Your iPhone Is Slowing Down*," the "Company silently introduced a trade-off between

4

HAEGGQUIST & ECK, LLP

battery life and performance reduction without telling iPhone owners a $79 replacement battery (third parties charge less) would restore both." In addition to increasing sales of newer versions of the Devices (*i.e.*, upgrades), Apple's misrepresentations concerning the Updates permitted Apple to avoid undertaking a costly recall or replacement program for the Devices.

8.      In addition to avoiding a costly recall or replacement program, Apple knowingly omitted to inform consumers of the reason for the planned slowdown for another simple, and even more lucrative, reason – its conduct was designed instead to cause consumers to upgrade to the newer version of the Devices being currently marketed by Apple.

9.      Updates became Apple's way of making post-sale adjustments to Devices in the hands of consumers.  Even better for Apple, it has enjoyed complete control on what it disclosed (or chose not to disclose) to Plaintiff and the Class as to the reason it recommended the Updates. Apple abused that control by effectively gaining remote access to the Devices to make changes that they either failed to disclose to consumers or changes for which they failed to disclose the true purpose of the update. These nondisclosures also made Apple's affirmative statements as to the reasons for the Updates materially false when made.

10.      While neither Plaintiff, nor the proposed Class, had any advance knowledge of the facts contained in Apple's startling December 20 Admission, the motive for Apple's conduct is foreshadowed in an October 29, 2013 article called, "*Cracking the Apple Trap*" by Catherine Rampell, appearing in *The New York Times Magazine*. Ms. Rampell wrote of her belief that Apple was engaging in a so-called practice of "planned obsolescence," and noted that her iPhone 4 was "becoming a lot more sluggish" and the "battery was starting to run down much faster" right about the time the iPhone 5S and 5C were being marketed. Rampell reported being told by unnamed "tech analysts" that:

> [T]he new operating system (iOS 7) being pushed out to existing users was making older models unbearably slow. Apple phone batteries, which have a finite number of charges in them to begin with, were drained by the new software.... It seemed like Apple was sending me a not-so-subtle message to upgrade.

11.      According to media reports, as of early January 2018, at least one U.S. Senator and regulators from several foreign countries were reportedly reviewing Apple's conduct.

HAEGGQUIST & ECK, LLP

Recently, it has been rumored that the Securities and Exchange Commission and the United States Department of Justice are inquiring into Apple's conduct.  Apple, via a spokesperson, has been cited as stating only that some "questions" have been asked by "government agencies."[5]

12.     For reasons set forth herein, Apple is, and was at all relevant times, aware that it designed one or more of the Updates to slow down the operation of the Devices, but Apple failed to disclose that fact or warn Plaintiff and the Class.

13.     As of the date of filing this action, the Devices are in continued use by the Class, causing them additional harm. While Apple's recent Apology indicates that it will offer a reduced price replacement battery for the Devices (*i.e.*, for Devices past the standard warranty) and that it will offer another "update," these belated offers simply illustrate that Apple could simply have informed consumers of the need to replace batteries at an earlier date, offered a battery replacement or recall program earlier, or simply issued an update to remove the features causing the slowdown. It is too little too late as Plaintiff and the Class have been artificially deprived of properly functioning Devices during the period that Apple was affirmatively causing them to upload the damaging Updates. In addition, it is understood that Plaintiff and the Class cannot simply remove the Updates once installed.[6]  As a result, Plaintiff and the Class (which likely number in the millions) have both purchased and used Devices that have been compromised by Apple's Updates, causing them harm.

---

[5]     *See*    https://www.bloomberg.com/news/articles/2018-01-30/u-s-said-to-probe-apple-over-updates-that-slow-older-iphones-jd1yahj7.

[6]     The inability to revert back to prior versions is explained in a February 1, 2017 Forbes article entitled, "Apple iOS 10.2.1 Suddenly Becomes A Bigger Problem," As journalist Gordon Kelly explains in the article: "Apple has decided to do what it normally does shortly after an iOS release: it has stopped signing the previous version. This means any user running the new iOS 10.2.1 upgrade cannot go back to iOS 10.2 because the checks (sign off) devices require before installing an update will be told by Apple servers it is invalid."   After the December 20 Admission, Apple claims to be planning to release an update to permit consumers to remove the restrictions on power that were implemented via the Updates.  This does not change the fact that consumers were harmed during the period of time that the improper Updates were installed.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

HAEGGQUIST & ECK, LLP

14.     Accordingly, Plaintiff brings this class action on behalf of himself and all others similarly situated, asserting claims for fraud and deceit, violations of California Business & Professions Code §§17200 *et seq.*, trespass to chattels, and for money had and received.  Plaintiff seeks damages and equitable relief on behalf of the Class, which relief includes, but is not limited to, the following:  providing Plaintiff and all Class members a full refund of the amount each such person paid for their Devices, or a replacement version of Apple's newest versions of the Devices that are available on the date of entry of any judgment in the action.  Plaintiff also seeks costs and expenses, including attorneys' fees and expert fees; and any additional relief that this Court determines to be necessary to provide complete relief to Plaintiff and the Class.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), as to the named Plaintiff and every member of the Class, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million dollars, and members of the Class reside across the United States and are therefore diverse from Defendant.  This Court also has jurisdiction over the action based upon the diversity of the parties pursuant to 28 U.S.C. §1332. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

16.     This Court has personal jurisdiction over Apple because its corporate headquarters are located in Cupertino, California, it is authorized to conduct business in California, and it has intentionally availed itself of the laws and markets of California through the promotion, marketing, distribution, and sale of the Devices in, and from, California.

17.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(a) & (b), because Defendant resides in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a), because Defendant transacts a substantial amount of its business in this District. Defendant is headquartered in Santa Clara County, which is assigned to this Division of the Court.

HAEGGQUIST & ECK, LLP

**INTRADISTRICT ASSIGNMENT**

18.     Assignment to the San Jose Division is proper because a substantial portion of the acts, events, and omissions giving rise to this action occurred in Santa Clara, which is within the purview of the San Jose Division of this District.

**THE PARTIES**

19.     Plaintiff Gary Merenstein ("Merenstein"), a Colorado resident, purchased an iPhone SE in April 2016. Since the date of purchase, Merenstein has installed one or more of the Updates from Apple on his iPhone SE. The Updates have caused a progressive slowing of the operational abilities of his device.

20.     Defendant Apple Inc. is incorporated in California. Apple's executive offices and company headquarters are located at 1 Infinite Loop, Cupertino, California 95104. Apple is registered to do business in the State of California, and Apple conducts substantial business in California. Apple is a publicly registered company with shares that trade on NASDAQ, a national exchange. Apple markets and sells its Devices by the means and instrumentalities of interstate commerce throughout the United States, including to tens of thousands of consumers in California.

**APPLE'S UNLAWFUL CONDUCT**

21.     Since its introduction in 2007, the iPhone, a so-called "smartphone," historically has been a primary source of Apple's revenues across the sales of the Devices.[7]  During 2016, however, Apple began to experience a trifecta of problems that threatened its continued dominance of the smartphone market. Apple was in a crunch to find ways to increase sales (*i.e.*, consumers upgrading to buy new versions of the Devices) just at the time it was launching the first of the Updates at the end of 2016. Although Plaintiff and the Class need not establish Apple's reasons for its misconduct, a "perfect storm" was brewing for Apple at the end of 2016.

---

[7]     For example, in the Company's Form 10-K for the fiscal year ended September 30, 2017 (the "2017 Form 10-K"), iPhone sales were reported as 62% of total net sales for the 2017 fiscal year.

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

22.     First, Apple experienced declining consumer upgrades to newer released versions of the iPhone during 2016. As admitted by Apple in the 2017 Form 10-K:

> iPhone net sales decreased during 2016 compared to 2015. The Company believes the sales decline was due primarily to a lower rate of iPhone upgrades during 2016 compared to 2015 and challenging macroeconomic conditions in a number of major markets in 2016.

23.     Second, Apple was experiencing increased competition in the "smartphone" market. Competitors were ramping up their own versions of smartphones at the end of 2016, just before the Updates were issued. For example, in October 2016, Google was launching its smartphone, known as the "Pixel". As reported in an October 25, 2016 online article published by Rupert Neate on theguardian.com, entitled, "*Apple's annual profits fall for first time in 15 years as iPhone sales decline*":

> The iPhone, which first launched in June 2007, has transformed the telecoms industry but Apple is now facing more intense competition from the likes of Google, which last week released its first branded smartphone, the Pixel, and upstart rivals offering much cheaper smartphone devices in key markets such as China.[8]

24.     Third, just before the issuance of the Updates in late 2016, Apple was hit with scores of online consumer complaints that iPhone 6S and iPhone 6S Plus devices were suddenly shutting down, even when the devices had sufficient charge showing on the battery. Accordingly, in late November 2016, Apple announced a voluntary program to replace batteries, but only in these particular devices and only for devices manufactured in September and October 2015. Apple is reported in the media as having blamed the failure on the battery component in the subject devices being "exposed to ambient air" before being assembled into battery packs.[9] In other words, rather than admitting that there was any specific issues with, or need to replace,

---

[8]     *See* https://www.theguardian.com/technology/2016/oct/25/apple-profits-sales-decline-2016-iphone-7.

[9]     *See The Inquisitr*, Simon Alvarez, December 6, 2016, "iOS 10.1.1 Battery Problems: Apple Admits To Defect As First Reference to Project Titan Emerges" at https://www.inquisitr.com/3771051/ios-10-1-1-problems-apple-project-titan/?utm_medium= referral&utm_source=yahoo&utm_campaign=homepage. *See also* https://finance.yahoo.com/news/ios-10-1-1-battery-063042834.html.

batteries across a broader group of its Devices (as opposed to being an isolated "air" exposure incident with just a few iPhones), Apple chose to mask any potential Battery Issues by issuing the Updates.

25.     Indeed, Apple knew that the key way it could drive consumers to upgrade to newer versions of the Devices was to slow them down. It is widely known that consumers expect their iPhones (or smartphones) to be fast and have long battery charge. Indeed, this has been a continued theme, if not a central platform, of Apple's repeated marketing campaigns designed to convince consumers to buy the new, updated models of the iPhones as they are released. One need look no further than Apple's website announcements for iPhone X:

- iPhone X is the future of the smartphone.... super fast A11 Bionic chip with neural engine ... iPhone X enables fluid new user experiences ... it is the beginning of the next ten years for iPhone.

- A second-generation performance controller and custom battery design that lasts up to two hours longer between charges than iPhone 7

- The new Apple designed three core GPU is up to 30 percent faster than A10 Fusion.

- The four efficiency cores in the all new CPU are up to 70 percent faster than A10 Fusion. And the two performance cores are up to 25 percent faster.

26.     As a result of the above factors, by the end of 2016, Apple knew it had to increase sales of iPhones and other new versions of the Devices, while at the same time trying to give the appearance of fixing the "unexpected slowdown" issues, as well as squelching any concern that Apple may be facing an issue with the batteries used in the Devices.[10]

27.     Accordingly, on or about December 12, 2016, Apple released the first of the Updates, iOS 10.2. Update iOS 10.2.1, as stated on Apple's website, was intended for use by, and to be compatible with, "iPhone 5 and later [iPhone models], iPad 4th generation and later

---

[10]     Therefore, it was no mere coincidence that the Updates slowed the Devices, but rather what Apple planned at the outset to remedy their decreasing iPhone sales and mask the Battery Issues. The plan worked. As stated in the 2017 Form 10-K: "iPhone net sales increased during 2017 compared to 2016 due to higher iPhone unit sales and a different mix of iPhones with higher average selling prices."

HAEGGQUIST & ECK, LLP

[iPad models], iPod touch 6th generation and later [models]." The Software Update provided by Apple to Plaintiff and the other Class members described the iOS 10.2 update as follows:

> iOS 10.2 introduces new features including the TV app (US only), a new and unified experience for accessing your TV shows and movies across multiple video apps. Emoji have been beautifully redesigned to reveal even more detail and over 100 new emoji have been added including new faces, food, animals, sports, and professions. This update also includes stability improvements and bug fixes.

28.     On or about January 23, 2017, Apple released the second of the Updates, iOS 10.2.1. The security content of iOS 10.2.1, as stated on Apple's website, was that iOS 10.2.1 was intended for use by, and to be compatible with, "iPhone 5 and later [iPhone models], iPad 4th generation and later [iPad models], iPod touch 6th generation and later [models]." The update was represented by Apple as a "minor update" to iOS 10.2 that "includes bug fixes and improves the security of your iPhone or iPad." Apple stated that iOS 10.2.1 "also improves power management during peak workloads to avoid unexpected shutdowns on iPhone." No disclosure was made, however, as to the component of the device or technology involved in causing the unexpected shutdowns, nor that Apple caused the update to be programmed in a way to slow down the operating function of the device.

29.     Indeed, Apple praised the iOS 10.2.1 in statements to media sources. For example, Techcrunch.com posted an article by Matthew Panzario, reporting the following statements on behalf of Apple in February 2017:[11]

> With iOS 10.2.1, Apple made improvements to reduce occurrences of unexpected shutdowns that a small number of users were experiencing with their iPhone. iOS 10.2.1 already has over 50% of active iOS devices upgraded and the diagnostic data we've received from upgraders shows that for this small percentage of users experiencing the issue, we're seeing a more than 80% reduction in iPhone 6s and over 70% reduction on iPhone 6 of devices unexpectedly shutting down.

> We also added the ability for the phone to restart without needing to connect to power, if a user still encounters an unexpected shutdown. It is important to note that these unexpected shutdowns are not a safety issue, but we understand it can

---

[11]   https://techcrunch.com/2017/02/23/apple-says-ios-10-2-1-has-reduced-unexpected-iphone-6s-shutdown-issues-by-80/.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

HAEGGQUIST & ECK, LLP

be an inconvenience and wanted to fix the issue as quickly as possible. If a customer has any issues with their device they can contact AppleCare.

30.     Apple provided no warning or notice to consumers, or the public, in connection with the release of its iOS 10.2.1 update, that the update would cause the specified iPhone models to operate significantly slower, and would otherwise degrade the overall performance, functionality, and usability of those phones.

31.     While Apple was trying to hide the real impact of the Updates, and how they designed the Updates to cause those changes, consumers were reporting to Apple that their Devices were becoming slow and impaired after the Updates. For example, after the update to iOS 10.2.1, Apple's own online support forum reveals reports such as the following from an self-described iPhone 6 user with the username "epurschke":

> Q: iPhone 6 running slow, won't download or update apps, storage is wrong
>
> I noticed the other day that my phone was starting to act slow in response and download. I checked my usage and I was full. I deleted all (15GB) of my music since I don't use it. It worked for the rest of the day. Today it did the same thing, the only issue is my music is not showing up in storage but the 15GB are back for some reason.
>
> I've been trying to back up my phone since that first day and it will start for about 3 minutes then it will say the phone is disconnected.
>
> I'm doing everything I can without restoring the phone to factory settings, but I'm running out of ideas.
>
> iPhone 6, iOS 10.2.1
>
> Posted on Mar 8, 2017 12:13 PM

*See* https://discussions.apple.com/thread/7885326.

32.     As discussed herein, Apple was well aware, at the time that it released the iOS 10.2.1 update, that it would cause slowing and adverse-performance issues with the Devices because that is what Apple designed the Updates to do in order to prompt consumers to upgrade their devices and/or to mask the Battery Issues.

33.     Apple's conduct is even more egregious given the fact that Apple marketed and advertised its iPhones as being fully compatible and working well with the future iOS updates

HAEGGQUIST & ECK, LLP

it would release. For example, in Apple's nationwide advertising campaign – "Why There's Nothing Quite like iPhone" – Apple assured iPhone users (including those with one or more of the Devices such as the iPhone 6 and other older model iPhones) that they had nothing to worry about when the iOS was updated, and that their phones would continue to work "ridiculously well." Indeed, Apple proclaimed the long-term, future compatibility of its iPhone models by stating:

> It should have hardware and software that were designed to work with each other. And enhance each other. By people who frequently see each other. That's how you make a phone work ridiculously well.
>
> And whenever there are shiny, new software updates with shiny, new features, you should be able to sit back, relax, and know your phone will get them. And be compatible with them. For years. For free.

34.     Plaintiff and the Class Members were subjected to Apple's same, or similar, false, misleading, and deceptive statements in promoting the use of its Updates. Plaintiff and the Class Members relied on Apple's false, misleading, and deceptive statements (including omissions) in installing one or more of the Updates with the fair and reasonable expectation of receiving equal or better performance and/or new features and functionality.

35.     After updating to iOS 10.2 and the subsequent versions thereof (identified above as the "Updates"), Plaintiff's iPhone SE became significantly impaired. Indeed, the Updates caused the operation and performance of the Devices, including Plaintiff's iPhone SE, to slow down. Plaintiff and the Class (as users of one or more of the Devices), experienced slower launches of applications, slower web browsing and downloading of data, delayed touchscreen interaction, and other performance issues, including crashes, freezes, battery drain, Wi-Fi and internet connectivity issues, and home screen failure.

36.     As a result of the Updates, Plaintiff and the Class have paid for iPhones (or other Devices) that are severely impaired in value and have compromised functionality.

37.     The audacity of the conduct belatedly revealed by Apple is perhaps best demonstrated by the onslaught of criticism of Apple in public forums online and in magazines. In a December 21, 2017 Forbes article entitled, "*Why Your iPhone Is Slowing Down*," journalist

HAEGGQUIST & ECK, LLP

Gordon Kelly taunted at "Why Apple's Defence Is No Defense," stating his view that Apple "deliberately slows older iPhones." In a December 19, 2017 article in Newsweek, entitled "*The Apple iPhone Slow Down is Real – Here's Why*," tech journalist Dana Dovey reported that an analysis of iPhone data revealed that "iPhones perform worse with newer iOS updates…" According to Dovey's article, "[r]esults showed that the iPhone 6S running on iOS 10.2 performed fine, but when the same phones were upgraded to the iOS 10.2.1 in January 2017, they began to gradually perform worse. The same downward performance trend was seen on iPhone 6S running iOS 11.2, an update released in December 2017." It has recently been reported in the media that at least one U.S. Senator has contacted Apple in writing to question their conduct, and that regulators in several foreign countries are also investigating the conduct.

38.     Incredibly, as set forth above, Apple itself confirmed, in the December 20 Admission, that iOS 10.2.1 and subsequent iOS Updates to the Devices were, in fact, intended to "smooth" (*i.e.*, slowdown) and hinder the performance.

39.     Apple's December 20 Admission was the result of being caught with the proverbial "hand in the cookie jar," as opposed to any altruistic act of good faith. On December 18, 2017, just two days prior to Apple's "revelation," John Poole, founder of Primate Labs and developer at Geekbench, published a blog post documenting his examination of iPhone 6 and 7 devices that were using different versions of iOS. As part of his analysis, Poole compiled data from the performance tests of thousands of iPhones and specifically looked at phones running Updates iOS 10.2 and iOS 10.2.1.

40.     Poole's analysis indicated that iPhone 6 models were, in fact, suffering from widespread slowdown after updating to iOS 10.2.1, and concluded that "users will experience reduced performance without notification" from such updates. According to Poole, the slowdown in iPhone 6 performance from the iOS update was intentional and planned, as "Apple introduced CPU slow-down" to address a battery performance issue that Apple claimed was affecting older model iPhones. Poole further remarked on the confusing and deceptive nature of the upgrade, stating it "will also cause users to think, 'my phone is slow so I should replace it' not, 'my phone is slow so I should replace its battery.'"

HAEGGQUIST & ECK, LLP

41.     As a result of Apple's deceptive practices and wrongful conduct described above, Plaintiff and other Class Members were harmed by losing the normal use of their Devices. Indeed, through its conduct, Apple has compelled many iPhone owners to "upgrade" to a newer iPhone model by leaving them with the impression that their current phones are not working correctly, when in fact, it is Apple's Updates that were causing the adverse performance issues.

42.     Plaintiff has no record that Apple, at any time prior to December 20, 2017, sent any notice, warning, recall, or alert that any of the Updates would, or were designed to, slow down performance on their Devices, or the reasons why the slow-down was being applied via the Updates.

43.     In conjunction with each sale of the Devices, Apple marketed, advertised, and warranted that the Devices were free from defects.[12]

44.     As set forth above, prior to the December 20 Admission, Apple made express representations about the reason for the Updates being simply to "include[] stability improvements and bug fixes," to "improve[] the security of your iPhone or iPad," to "reduce occurrences of unexpected shutdowns that a small number of users were experiencing," to enable the phones to "restart without needing to connect to power, if a user still encounters an unexpected shutdown" and similar statements. At no time prior to the December 20 Admission did Apple advise consumers that there were any Battery Issues, or that the Updates were designed to "smooth" out or slow down the operation of the Devices in any way.

45.     Indeed, Apple consistently made representations about why consumers Devices would still operate "ridiculously well" after installation of Updates, that the hardware of its Devices and the software (*i.e.*, including Updates) that it would issue were "designed to work with each other," to "enhance each other," and that "whenever there are shiny, new software updates with shiny, new features, you should be able to sit back, relax, and know your phone will get them. And be compatible with them. For years." Apple even reminded consumers that

---

[12]     Apple's website contains copies of warranties that apply to the Devices based upon the specific time period of purchase.  In addition, Apple's website posts warranties related to the Updates.

Haeggquist & Eck, LLP

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

the Devices and Updates were made by "people who frequently see each other," further enforcing that Apple had overall and tightknit control over the entire manufacturing process of the Devices and Updates.

46.     Apple intended for Plaintiff and the Class to believe its statements and representations about its Devices and Updates, and to trust that its products are of the highest quality. Apple has concealed materials facts relating to the Updates and the Battery Issues, causing harm to Plaintiff and the Class.  Contrary to Apple's representations, Plaintiff and Class members experienced, and continue to experience, problems with their Devices after the Updates were installed, even though they have followed the instructions for use and have maintained their Devices with ordinary care.

47.     As the creator, designer, and manufacturer of the Devices and the Updates, Apple possesses specialized knowledge regarding the composition of the Devices and the Updates, and it is in a superior position to know how the Company's Updates were designed to, and did, impact the Devices. In fact, as evidenced by the many purchasers of the Devices who have gone through the trouble of logging on to Apple's website to complain of the problems alleged herein, Apple has been aware of these defects for more than a year, but yet continued to lie to, and/or conceal the truth from, Plaintiff and the Class.

48.     Apple knew and was aware, or should have been aware, before marketing and selling the Devices, and offering the Updates, that they were inherently defective because even when the Devices were operated with the Updates installed as instructed, the Devices were substantially likely to slow in performance. Apple nonetheless failed to warn Plaintiff and the Class of the impact the Updates would have on the Devices, or of the Battery Issues. If Plaintiff and other Class members had known about the Updates and the Battery Issues, they would not have paid significant sums for their Devices.

49.     Apple's conduct in releasing the Updates for the Devices, recommending and causing Plaintiff and the Class to install those Updates, and in selling Devices with Battery Issues has resulted in substantial economic damage to Plaintiff and the Class.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

HAEGGQUIST & ECK, LLP

50.     For reasons set forth herein, Apple sold defective Devices to Plaintiff and Class members that were not fit for their intended use.  Apple also sold those Devices with the promise of Updates that were also not fit for their intended use. Apple has profited, either directly or indirectly, by concealing the nature and extent of the Battery Issues with the Devices and the nature of the Updates. Apple has no effective remedy for the harm suffered by Plaintiff and the Class during the period of time the Updates were installed on the Devices and/or the Devices suffered from the Battery Issues.

51.     Furthermore, Apple has not recalled all of the Devices on which the Updates were installed, nor has it offered a free replacement of such Devices with either a new model being sold by Apple currently, or an exact replacement model of the existing Devices in the hands of Plaintiff and the Class in a manner that is free from the Updates and with a new battery.

52.     As set forth above, Apple profits enormously from the sales of its Devices, while Plaintiff and Class members incurred damages, including the price they paid to purchase the defective Devices, and the costs to replace them.

## PLAINTIFF'S ALLEGATIONS

53.     Plaintiff purchased and used the iPhone SE, believing it to be as warranted by Apple and designed to work as represented and warranted by Apple.

54.     iPhone SE was introduced by Apple CEO Tim Cook ("Cook") and other members of Apple management during a March 21, 2016 Apple Special Event (the "Event") hosted at the Company's Cupertino headquarters.  A video of the event is posted on Apple's website for review.  As stated by Cook at the outset of the Event, Apple knows that iPhones are "deeply personal" and an "extension of ourselves".   Another member of the Apple team introduced iPhone SE during the Event, while Cook was present (referred to hereinafter as the "iPhone SE Presenter.")  The iPhone SE Presenter stated that the iPhone SE was the "most powerful four-inch phone ever," that it had LTE speeds 50% "faster" than iPhone 5s, with "incredible graphics performance," that was ideal for "playing graphic intensive" games.  The iPhone SE Presenter also stated that the iPhone SE had "incredible battery improvements across the board."  Cook also stated that with the addition of the iPhone SE, Apple had the "strongest

HAEGGQUIST & ECK, LLP

1    phone lineup we've ever had."  Cook further noted that iOS is "fundamentally important to

2    iPhone."[13]

3        55.    Since purchasing his iPhone SE, Plaintiff has had to install the Updates, resulting

4    in a slowing of the functioning of his iPhone SE.

5        56.    Plaintiff's experiences with the iPhone SE are typical of the thousands (if not

6    millions) of other Class members, including those who have registered their complaints with

7    Apple, and have documented their problems with the Devices on Apple's website and the other

8    various website forums dedicated to Apple products. The similarity of the complaints about the

9    Devices, particularly those following installation of the Updates, further evidences the

10   uniformity of the product defects and Apple's misconduct alleged herein.

11       57.    Plaintiff has suffered injury in fact and loss of money or property in, among other

12   things, the amount of the full price he paid for his iPhone SE.

13                                **CLASS ACTION ALLEGATIONS**

14       58.    Plaintiff brings this class action on behalf of himself individually and all others

15   similarly situated, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

16       59.    The proposed class consists of all persons who reside in the United States and

17   who purchased or owned one or more of the Devices from the time of the introduction of each

18   of the Devices to the marketplace for public sale through, and including, December 20, 2017,

19   and on whose Devices one or more of the Updates was installed (the "Class").

20       60.    Excluded from the Class are:

21            (a)    Apple, its subsidiaries, affiliates, employees, officers and directors, and

22   all persons or entities that contract with Apple to distribute or sell the Devices to the public;

23            (b)    persons or entities who have released Apple in any individual, non-class

24   action or proceeding against Apple based on the same conduct alleged herein;

25            (c)    the judge presiding over this action; and

26

27   _____

     [13]    Upon information and belief, Apple conducted "Special Event" or similar presentations

28   to introduce several of the Devices.

HAEGGQUIST & ECK, LLP

1    (d)    jurors who render a verdict, if any, on the claims in this action.

2    61.    This action is properly brought as a class action for the following reasons:

3    (a)    the proposed Class is so numerous and geographically dispersed

4    throughout the United States that the joinder of all class members is impracticable. While

5    Plaintiff does not know the exact number and identity of all class members, Plaintiff is informed

6    and believes that there are millions of class members. The precise number of members can be

7    ascertained through discovery, which will include Apple's sales, service, and other business

8    records;

9    (b)    the disposition of Plaintiff's and the Class' claims in a class action will

10   provide substantial benefits to both the parties and the Court;

11   (c)    the proposed Class is both ascertainable and there is a well-defined

12   community of interest in the questions of law or fact alleged herein since the rights of each

13   proposed Class member were infringed or violated in the same fashion;

14   (d)    there are questions of law and fact common to the proposed Class which

15   predominate over any questions that may affect particular class members. Such common

16   questions of law and fact include, but are not limited to:

17   (1)    whether the Devices had Battery Issues;

18   (2)    whether Apple designed Updates in a manner that was designed

19   to slow the Devices;

20   (3)    whether Apple designed Updates in a manner that was designed

21   to slow the Devices to mask the Battery Issues;

22   (4)    whether Apple made false representations and concealed material

23   facts from its communications and disclosures to Plaintiff and the Class about the Devices,

24   Updates and Battery Issues;

25   (5)    whether Apple made the false representations and omissions

26   referenced in subparagraph (4) to avoid liability for the defective Devices (including Devices

27   made defective by installation of the Updates) and/or for compensating consumers for repair or

28   replacement of the Devices and/or the batteries used in the Devices;

HAEGGQUIST & ECK, LLP

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

(6) whether Apple knew that the Devices and Updates were, and are, materially defective;

(7) whether Apple made fraudulent misrepresentations and omissions as a result of the issues set forth in subparagraphs (1) – (6) above;

(8) whether Apple engaged in an unfair and/or fraudulent business practice in violation of California Business & Professions Code §§17200 *et seq.*;

(9) whether Apple has been unjustly enriched by the funds paid by, or on behalf of, Plaintiff and the proposed Class members for the Devices;

(10) whether Plaintiff and proposed Class members have been harmed by Apple and the proper measure of relief;

(11) whether Plaintiff and proposed Class members are entitled to an award of punitive damages, attorneys' fees, and expenses against Apple; and

(12) whether, as a result of Apple's misconduct, Plaintiff and the Class are entitled to equitable relief, and if so, the nature of such relief;

(e) Plaintiff's claims are typical of the claims of the members of the proposed Class. Plaintiff and all Class members have been injured by the same wrongful practices of Apple. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all Class members and are based on the same legal theories;

(f) Plaintiff will fairly and adequately protect the interests of the proposed Class in that he has no interests antagonistic to those of the other proposed Class members, and Plaintiff has retained attorneys experienced in consumer class actions and complex litigation;

(g) a class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(1) given the size of individual proposed Class members' claims and the expense of litigating those claims, few, if any, of the members of the proposed Class could afford to, or would, seek legal redress individually for the wrongs Apple committed against them and absent proposed Class members have no substantial interest in individually controlling the prosecution of individual actions;

HAEGGQUIST & ECK, LLP

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

HAEGGQUIST & ECK, LLP

(2)    this action will promote an orderly and expeditious administration and adjudication of the claims for the proposed Class, economies of time, effort and resources will be fostered, and uniformity of decisions will be insured;

(3)    without a class action, proposed Class members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct; and

(4)    Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

62.    Apple has, or has access to, address, phone, and/or e-mail information for the Class members, which may be used for the purpose of providing notice of the pendency of this class action.

63.    Plaintiff seeks damages and equitable/injunctive relief on behalf of the proposed Class on grounds generally applicable to the entire proposed Class.

64.    Plaintiff reserves the right to amend or modify the Class definitions in connection with his motion for class certification, as a result of discovery, at trial, or as otherwise allowed by law.

## COUNT I

### (Fraud and Deceit)

65.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

66.    At all times relevant herein, Apple made misrepresentations of material fact to, and also concealed material facts from, Plaintiff and the proposed Class regarding, among other things:

(a)    the speed, performance, and battery capabilities of the Devices;

(b)    the merchantability of the Devices;

(c)    the nature and scope of the Updates;

(d)    the compatibility of the Updates when installed on the Devices;

(e)    the reason Apple issued the Updates;

21

1    (f)    the Battery Issues; and

2    (g)    the reason the Devices were experiencing unexpected shutdowns.

3    67.    Apple knew its representations were false when it made them, and made the false

4  representations for the purpose of, among other things: 1) causing Class members to upgrade to

5  newer models of the Devices; 2) keeping Plaintiff and the proposed Class from discovering the

6  true facts about the Devices, Updates, and/or Battery Issues; and/or 3) saving Apple from an

7  expensive recall and/or replacement program.

8    68.    Apple has concealed material facts from Plaintiff and the proposed Class,

9  including, but not limited to, the following:

10    (a)    the speed, performance, and battery capabilities of the Devices;

11    (b)    the merchantability of the Devices;

12    (c)    the nature and scope of the Updates;

13    (d)    the reason Apple issued the Updates;

14    (e)    the Battery Issues;

15    (f)    the reason Devices were experiencing unexpected shutdowns;

16    (g)    that installing the Updates would cause the Devices to perform

17  substantially slower;

18    (h)    that the Battery Issues existed, and could be remedied by replacing the

19  batteries in the Devices; and

20    (i)    that Apple intended the Updates to slow the Devices in order to cause

21  Plaintiff and the Class to purchase newer models of the Devices sold by Apple.

22    69.    Apple knew the facts that it had concealed from Plaintiff and the Class were

23  material, and Apple concealed these facts from Plaintiff and the proposed Class as a means of,

24  among other things: (1) causing Class members to upgrade to newer models of the Devices; (2)

25  keeping Plaintiff and the proposed Class from discovering the true facts about the Devices,

26  Updates, and/or Battery Issues; and/or (3) saving Apple from an expensive recall and/or

27  replacement program.

28

HAEGGQUIST & ECK, LLP

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

70.     Because Apple engaged in the conduct alleged herein deliberately and with willful and malicious intent, Plaintiff and the proposed Class are entitled to an award of punitive damages. The total amount of damages suffered by Plaintiff and the proposed Class will be subject to proof at trial.

## COUNT II

### (Violations of California Business and Professions Code §17200)

71.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

72.     California Business & Professions Code §17200 prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice".

73.     Apple violated California Business & Professions Code §17200's prohibition against engaging in a "fraudulent" business act or practice by, *inter alia*, misrepresenting the Devices and Updates, as set forth herein.   Among other things, Apple falsely represented that one or more of the Updates was designed to provide unspecified bug fixes and security improvements, and concealed that the Updates were also designed to slow the operation of the Devices.

74.     Apple has engaged, and continues to engage, in unfair business practices with regard to software Updates to its operating system.  Apple designed one or more of the Updates in a manner that materially diminishes the speed and performance of certain of the Devices, particularly the Company's iPhones.  Apple misrepresented the nature and scope of the Updates, and concealed that the Updates were purposefully designed to implement a slower operation of the Devices.  Apple also failed to inform Plaintiff and the Class that faster processing speeds could be restored by replacing the battery.  Apple's conduct is unfair because it was substantially injurious to Plaintiff and the Class. Apple's conduct is not outweighed by any countervailing benefits to Plaintiff and the Class.

75.     Apple's unfair and fraudulent business practices directly and proximately caused damage to Plaintiff and the Class members.

HAEGGQUIST & ECK, LLP

76.     Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order: (a) requiring Apple to cease the deceptive and unfair business practices alleged herein; (b) requiring Apple to restore to Plaintiff and the Class members any money acquired by means of the deceptive and unfair business practices (restitution); and (c) awarding reasonable costs and attorneys' fees.

## COUNT III

### (Trespass to Chattels)

77.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

78.     Apple intentionally trespassed upon the use and ownership of the Devices in the hands of Plaintiff and the Class by the Updates, which Updates resulted in the impairment of the condition, quality, and/or value of the Devices for a substantial time period.

79.     Apple's conduct was done knowingly, and Plaintiff and the Class did not consent to the installation of any Updates that would be designed to slow down their Devices.

80.     Plaintiff and the Class members suffered actual damages as a result of Apple's misconduct.  Plaintiff, on behalf of the Class, seeks recovery of damages for the harm caused by Apple.

## COUNT IV

### (Money Had and Received)

81.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

82.     Plaintiff brings this count in order to pursue restitution based upon Apple's unjust enrichment.

83.     Apple, by virtue of the conduct alleged herein, has been unjustly enriched by the receipt and retention of monetary benefits from Plaintiff and the Class.

HAEGGQUIST & ECK, LLP

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

84.     Plaintiff and Class members were not aware of the true facts about the Devices, Updates or Battery Issues, and did not benefit from Apple's misconduct.

85.     Apple benefits from its misconduct by, among other things, retaining the monetary payments and benefits paid by, or on behalf of, Plaintiff and the Class for the Devices.

86.     Plaintiff seeks disgorgement and restitution of Apple's ill-gotten gains on behalf of Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court enter a judgment against Defendant that:

A.     This action be certified and maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify the proposed Class as defined, appointing Plaintiff as a representative of the Class, and appointing the attorneys and law firms representing Plaintiff as counsel for the Class;

B.     Awards compensatory, statutory, and/or punitive damages as to all Counts where such relief is permitted;

C.     Awards Plaintiff the costs of this action, including reasonable attorneys' fees and expenses;

D.     Awards injunctive relief, equitable monetary relief (including restitution and disgorgement of all ill-gotten gains to prevent Apple's unjust enrichment), and the imposition of a constructive trust upon, or otherwise restricting the proceeds of, Defendant's ill-gotten gains, to ensure that Plaintiff and proposed Class members have an effective remedy;

E.     Awards pre-judgment and post-judgment interest at the legal rate; and

F.     Such further legal and equitable relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 5, 2018

HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
AMBER L. ECK (177882)
KATHLEEN HERKENHOFF (168562)
AARON M. OLSEN (259923)
ROBERT D. PRINE (312432)

By: _____
KATHLEEN HERKENHOFF

225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: 619-342-8000
Facsimile: 619-342-7878

HAEGGQUIST & ECK, LLP
SAMANTHA A. SMITH (233331)
4000 Barranca Parkway, Suite 250
Irvine, CA  92604
Telephone: (949) 724-9200
Facsimile: (949) 724-9255

Attorneys for Plaintiff and the [Proposed] Class

HAEGGQUIST & ECK, LLP

CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF